CASINO MOTOR COMPANY
*vs.*
JOHN H. NEEDHAM, EDWARD E. ROSS,
RICHARD W. HOLMES, WARREN V. GRINDLE AND
CLARENCE M. PAGE

SUBSTITUTED RESPONDENTS:

GERALD J. GRADY, MATTHEW MCNEARY,
LEROY S. NICKERSON, DWIGHT B. DEMERRITT AND
VINA P. ADAMS

Penobscot.   Opinion, November 23, 1955.

*Michael Pilot,* for plaintiff.

*John H. Needham,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. FELLOWS, C. J., does not concur. WEBBER, J., concurs in a separate opinion. MR. JUSTICE TIRRELL sat at the time of argument and took part in conferences, but died before the writing of the opinion.

TAPLEY, J. On exceptions. The Town of Orono, Maine in 1933 enacted a zoning ordinance by authority of the provisions of R. S., 1930, Chap. 5, Secs. 137 to 144 inclusive. On November 14, 1951 the petitioner made application to the defendants, in their capacities as members of the Adjusting Board, for permission to erect a filling station within District Number 3, a residential district under the ordinance. The Board refused the permit after a hearing.

On motion, Gerald J. Grady, Matthew McNeary, Leroy S. Nickerson, Dwight B. Demerritt and Vina P. Adams were substituted as respondents in place of John H. Needham, Edward E. Ross, Richard W. Holmes, Warren V. Grindle and Clarence M. Page.

Petitioner brought a petition for mandamus against the respondents to compel the issuance of the permit. The alternative writ was issued.

The respondents in their return and answer to the alternative writ set forth the following matters of law and fact as cause for not performing the acts named in the writ to be performed:

1. That the respondents say that the petitioner has established no legal right to said permit; that it does not appear to be the plain duty of the respondents to grant said permit; that it was for said respondents, acting as said adjusting board under said ordinance, to determine the fitness or unfitness of the use of said land for a filling station; that the exercise of their discretion was required in the matter and that such discretion was exercised in a correct and legal manner.

2. That the court cannot compel the respondents to grant said permit by its writ of mandamus because the petitioner has an adequate specific legal remedy at law and one which is appropriate and exclusive to the particular circumstances

of the case, namely, by an appeal from said Adjusting Board to the Superior Court as provided by Revised Statutes of Maine, 1930, Chapter 5, Section 140, and acts amendatory thereof, and by Revised Statutes of 1944, Chapter 80, Section 89, and acts amendatory thereof.

A hearing was had before an Active Retired Justice of the Supreme Judicial Court. The justice rendered judgment for the petitioner and in his decree made certain rulings of law and findings of fact and ordered the writ of mandamus to issue, to which rulings of law and findings of fact the respondents seasonably excepted.

The respondents contend that the rulings of law, namely:

"1.   That the appeal Statute, to wit: R. S. 1930, Chapter 5, Section 140, was repealed by the laws of 1943, Chapter 199, Section 6.

2.   Ordinances previously enacted remain in effect, but it was Section 140 of the Statutes which gave the right of appeal and the Statute was repealed.

3.   That the Ordinance gave no appeal.

4.   The Statute having been repealed, there remains no appeal.

5.   That there can be no doubt that the repeal of the Statute of 1930, by the laws of 1943 defeated all rights of appeal under the former."

are erroneous.

They further say, in contention, that the justice below made findings of facts that were not supported by the evidence.

## EXCEPTIONS TO RULINGS OF LAW

The respondents contend that there exists a right of appeal from the findings of the Selectmen constituting an Ad-

justing Board and that the petitioner should have proceeded by appeal rather than mandamus.

The petitioner in answer asserts that the law provides no method of appeal in this case and that mandamus is the proper procedure.

The Town of Orono in the year 1933 enacted a zoning ordinance authorized by provisions of an enabling statute, being R. S., 1930, Chap. 5, Secs. 137-144 inclusive. Sec. 140, as amended by P. L. of 1939, Chap. 127, Sec. 1, provided an appeal from the Municipal Officers or Board of Zoning Adjustment to the Superior Court.

The Orono Zoning Ordinance has no provisions regarding appeal from the decisions of the Selectmen constituting an Adjusting Board.

Chap. 199, Sec. 6 of the P. L. of 1943, in part, reads as follows:

> **"Sec. 6. Relation to other acts.** Sections 137 to 144, inclusive, of chapter 5 and sections 31 and 32 of chapter 27 of the revised statutes, as amended, are hereby repealed. In a municipality not having a planning board, ordinances and regulations previously enacted under such sections shall continue in full force and effect and may be amended in accordance with the provisions of such sections until said ordinances and regulations are repealed or superseded by ordinances or regulations under sections 1 to 5, inclusive."

The words are clear and unambiguous that Secs. 137 to 144 inclusive, of Chap. 5, as amended, are repealed. This includes obviously Sec. 140 and its amendments, being the appeal section. The provision in Sec. 6:

> "In a municipality not having a planning board, ordinances and regulations previously enacted under such sections shall continue in full force and

effect and may be amended in accordance with the provisions of such sections until said ordinances and regulations are repealed or superseded by ordinances or regulations under sections 1 to 5, inclusive."

does not affect the repeal of Secs. 137 to 144, inclusive, excepting that it permits a municipality, such as the Town of Orono, to continue with its zoning ordinance which is unaffected by repeal of the mother statute. This is a saving clause and does not disturb the repealing act in so far as the appeal section is concerned.

*50 Am. Jur. Statutes, Sec. 527.*

In view of the fact that there are no appeal provisions in the zoning ordinance and the appeal section of the statute was repealed, there was no provision under which the petitioner could have proceeded by appeal.

The finding of the justice below as to rulings of law was correct and this exception is overruled.

### EXCEPTIONS TO FINDINGS OF FACT

The respondents in these exceptions assert there was no evidence to sustain certain material findings of fact establishing the bounds of the residential zone, and in particular they object to the vital ruling that the ordinance insofar as it placed the land in question in the residential zone was unconstitutional, hence invalid.

In our view it is not necessary that we pass upon these exceptions. Assuming the court was correct in the findings of fact and in the ruling that the ordinance was invalid, nevertheless it appears that mandamus is not a lawful remedy for the errors so established.

The Adjusting Board of the Town of Orono was created and receives its authority under provisions of the Zoning

Ordinance of the Town of Orono. Section 8 of the Zoning Ordinance reads as follows:

> "The Selectmen shall constitute an Adjusting Board, who shall hear and adjust complaints and shall determine the fitness and unfitness of various uses and other matters pertaining to the operation of this ordinance."

It is to be noted that one of the functions of the board is "shall determine the fit and unfitness of various uses." This means that the board has the right to grant variances. The members of the Adjusting Board are clothed with the power of determination of questions of fitness and unfitness of various uses of property coming under the provisions of the zoning ordinance. Their powers are discretionary in this respect. The petitioner unsuccessfully applied to the Adjusting Board for a "permit," to use the words of the parties, for a variance from the zoning restrictions in a lawfully established residential zone. We have seen that it had no appeal from such decision. It now demands the same permission from the same Board on a different ground, namely, that the ordinance insofar as it affects this land is invalid. The petitioner in its application for a writ of mandamus prays that a writ of mandamus issue commanding the members of the Adjusting Board to *issue their permit* allowing the petitioner to erect and maintain buildings on its land to be used as a filling station. The alternative writ alleges that on the fourteenth day of November, 1951 the petitioner made application to the Adjusting Board for a permit to erect and maintain a filling station on its land. The respondents in their return and answer to the alternative writ stated that it was not their duty to grant the permit and that they were acting as an Adjusting Board under the ordinance for the purpose of determining the fitness or unfitness of the use of the land for a filling station; that

the exercise of their discretion was required and that the discretion was exercised in a correct and legal manner.

We again refer to Section 8 of the ordinance and find there is nowhere in this section authority on the part of the Adjusting Board to issue a "permit of any kind." In so far as the facts in this case are concerned, the authority of the board is confined to the determination of "the fitness and unfitness of various uses." The record is silent as to whether or not there exists in the Town of Orono any public officer such as building inspector whose duty it would be to issue permits for the construction of buildings. There is a marked distinction between an application for a permit to build and an application seeking a variance of a zoning law. It is not necessary as we have suggested to determine in this proceeding whether the ordinance in the part under consideration is valid or invalid. If it is valid and the land is lawfully within the residential zone, subject to restrictions against filling stations, then without question the decision of the Adjusting Board denying a variance must stand. The fact that no appeal is provided from the Adjusting Board to the court does not authorize the court to compel the discretionary act through a writ of mandamus. If the land is lawfully within the residential zone, surely in mandamus we do not pass on what may or may not be a proper variance under the ordinance. If the decision of the Adjusting Board was to the effect that it approved the fitness of the use to which the property was to be used, then the applicant could proceed with its construction and maintenance of a filling station without the necessity of a permit unless the ordinances of the Town of Orono required the obtaining of a building permit.

*Bassett on Zoning,* page 174:

"Mandamus is available to the landowner to compel the administrative officer to do his duty as required by law. Perhaps the most frequent group

of cases where mandamus is employed by land-owners is where the building inspector refuses a permit which he ought lawfully to grant."

Such, however, is not the situation here presented.

When it appears that mandamus is not the appropriate remedy, the writ should be quashed.

*Webster* v. *Ballou,* 108 Me. 522, at page 524:

"Mandamus is an appropriate and necessary proceeding where a petitioner shows: (1) that his right to have the act done, which is sought by the writ, has been legally established; (2) that it is the plain duty of the party against whom the mandate is sought to do the act, and in the doing of which no discretion may be exercised; (3) that the writ will be availing, and that the petitioner has no other sufficient and adequate remedy."

*58 Am. Jur., Sec. 236,* page 1065:

"It has also been held that mandamus does not lie to review a decision of a zoning board denying a variation in the application of zoning restrictions, even though the application for mandamus is based on the ground that denial of the variation constitutes an arbitrary and discriminatory application of the zoning code which deprives the plaintiffs of their property without due process of law."

The nature of and limitations upon the use of mandamus are well stated in *Dorcourt Co.* v. *Great Northern Paper Co.,* 146 Me. 344, 347.

According to the record in this case, mandamus does not lie.

The entry will be

*Exceptions to ruling on right of appeal overruled.*

*Writ quashed.*

*Petition dismissed.*

WEBBER, J. (CONCURRING)

I concur in the result. I find myself unable to agree that it is unnecessary to pass upon the constitutional question which is clearly placed in issue by the exceptions and which has been ably argued by both opposing counsel. The learned justice below found that the petitioner's property, although in a residential zone, was in an area so completely occupied by business enterprises that the zoning ordinance was unconstitutional in its application to that particular property. The opinion of the court makes it apparent to the parties that the issues between them can be resolved by neither appeal nor mandamus. It leaves them, however, without any suggestion as to whether the petitioner may proceed in disregard of the ordinance, or must abide by the decision of the Adjusting Board denying a variance. Inasmuch as the issue is here squarely raised and the parties may be put to unnecessary expense and may engage in further unnecessary litigation if they are left in the twilight of judicial indecision, I feel compelled to comment on the respondents' other exceptions.

The justice below erroneously found that the residential zone extended from Forest Avenue a distance of 800 feet along Main Street in a westerly direction. The evidence makes it clear, and the petitioner in argument admits, that in fact only the westerly 300 feet of this 800 foot area was zoned as residential. The remaining 500 feet was properly zoned as a business district, all but one of the buildings therein being commercial. That this error was material and prejudicial is made readily apparent by the comments in the findings as to the nature and type of property within the "residential district." These findings place great emphasis on the predominance of commercial buildings in what the fact finder mistakenly took to be the area restricted to residential property. In the light of this false factual premise

it is not unnatural then that he should view the zoning as arbitrary, capricious and unreasonable. When we eliminate factual error, however, a very different picture emerges. It becomes apparent that those who sought to lay out the zones recognized that the area extending 500 feet westerly from Forest Avenue to and including the Town Hall property was, except for one building, all occupied by commercial enterprises. Accordingly, this was zoned as a business district. Beyond and westerly of the Town Hall property, however, all the property on both sides of the street, except for two filling stations, was residential. It was in this area that the petitioner's property, itself residential, was located. When a community is being zoned for the first time, the lines which separate the several zones must be placed somewhere and it is almost inevitable that there will be included an occasional non-conforming use. It is inconceivable that the justice below would have declared the ordinance unconstitutional as pertaining to the property of the petitioner if he had not misapprehended the true location of the boundary of the residential zone.

I am aware that in *Nectow* v. *City of Cambridge,* 277 U. S. 183, 48 Sup. Ct. 447, the zoning was declared unconstitutional as to the petitioner's property. It seems to me that that case rests upon and goes no further than its own facts. There the zone line passed through the property leaving part of it zoned as residential and part unrestricted. Moreover, there were large industrial uses in immediate proximity to the plot in question, including an automobile factory, a soap factory, and railroad tracks, which tended to prevent any residential development in the area. Mr. Justice Sutherland, who wrote the *Nectow* decision, also wrote the opinion in *Zahn* v. *Board of Public Works,* 274 U. S. 325, 47 Sup. Ct. 594, only a year earlier. In that case the facts more closely resembled the facts now before us. The residential zone included as nonconforming uses a

grocery store, a market, a fruit stand, a two-story brick business block, a few real estate offices, and one oil station. The opinion in the *Zahn* case states that "whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable" and goes on to say that whenever the question is "fairly debatable," the court will not substitute its judgment for that of the legislative body which had the primary responsibility. See also *Euclid* v. *Ambler Co.*, 272 U. S. 365, 47 Sup. Ct. 114. The *Zahn* decision further refers to the opinion of the California court then being reviewed (195 Cal. 497, 234 P. 388) as a "well reasoned opinion." At page 394 of 234 P. the California court said: " 'The mere fact that outside of the * * * district there was other property similar in nature and character would not justify the court upon ascertaining that fact to substitute its judgment for the legislative judgment. The boundary line of a district must always be more or less arbitrary, for the property on one side of the line cannot, in the nature of things, be very different from that immediately on the other side of that line.' " It appears significant that there is no suggestion in the *Nectow* case that the *Zahn* case is disturbed or overruled; on the contrary, it is cited with apparent approval.

In the case before us, we have within the residential zone nothing but residential property, save only two nonconforming uses, both filling stations. Filling stations are frequently found in residential areas and certainly they by no means destroy or diminish the value of residential property to the extent or in the way that certain types of industrial property do. Far more destructive of residential property values are the noise and noxious fumes and smoke which so often emanate from industrial plants and railroad sidings. There were no such plants or sidings in proximity to this residential zone. In my view, the location by Orono of a zone line at the approximate extremity of a well defined

business development, which line encompassed a residential area containing only two filling stations as nonconforming uses, was a reasonable and proper exercise of the police power both in its general application and in its specific application to the property of the petitioner. Such zoning is neither capricious nor confiscatory. I would specifically sustain the exceptions to the finding of a material fact without any supporting evidence, and to the ruling that the zoning ordinance was unconstitutional in its application to the petitioner's property.