**Randolph SPAIN, Jr. et al.**

v.

**CITY OF BREWER ***

Supreme Judicial Court of Maine.

Argued Sept. 9, 1983.

Decided April 25, 1984.

---

* We do not regard the individual members of the Brewer City Council as appropriate parties defendant to an appeal from their own decision. *See Lynch v. Town of Kittery,* 473 A.2d 1277, 1278 n. 1 (Me.1984).

Eaton, Peabody, Bradford & Veague, P.A., Thomas C. Johnston (orally), Bangor, for plaintiffs.

Ferris, Dearborn & Willey, Joel A. Dearborn (orally), Brewer, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

NICHOLS, Justice.

The issue presented on this appeal concerns the scope of a municipality's authority to deny an application for a permit to establish an automobile graveyard or junkyard pursuant to 30 M.R.S.A. §§ 2451–2460 (1978).[1]

The Plaintiffs, Green Point Auto Salvage Company, Inc. and its president and principal stockholder, Randolph Spain, Jr., own and operate an automobile salvage yard located on the Green Point Road in Brewer. The business consists of purchasing damaged or discarded motor vehicles, dismantling them and then salvaging or reconditioning their usable parts for resale. Twice a year the unused remains of the dismantled vehicles are crushed or "compacted" and removed from the site.

Before establishing the salvage business at this first location in February, 1981, the

---

1. Although in *Lynch v. Town of Kittery, supra,* this issue had been considered by the Superior Court, it was never squarely presented to this Court on appeal.

Plaintiffs applied for, and were refused, a certificate of occupancy by the local code enforcement officer. After hearing, the Brewer Zoning Board of Appeals reversed that decision and ordered issuance of a certificate of occupancy, concluding that the salvage operation was a permitted use in an industrial district because it involved "processing" and "wholesaling." Brewer Zoning Ordinance, ch. 24, art. 3, § 308.2. No appeal was taken from that ruling. The Plaintiffs then sought and obtained an automobile graveyard and junkyard permit from the Brewer City Council pursuant to 30 M.R.S.A. §§ 2451–2460 and Brewer Zoning Ordinance, ch. 20, art. 2, §§ 212–212.4.

In July, 1981, the Plaintiff, Randolph Spain, Jr., purchased a 9.5 acre lot located across the road from the existing salvage yard but within the same industrial district for the purpose of expanding the business. He filed an application for a second automobile graveyard permit with the City Council in the name of the Plaintiff Corporation on February 25, 1982. After a lengthy public hearing held in April, 1982, the City Council voted to deny the Plaintiff's application, stating the following reasons:

1. [I]t is the sense of the Council that a junkyard and/or automobile graveyard is *not a permitted use* in the Industrial District *under the City Zoning Ordinance* ... [and]

2. [I]t is the sense of the Council that development of the land for a junkyard and/or automobile graveyard *will cause pollution* to Felts [B]rook ... as a result of oil, grease and other substances draining from the yard into ditches ... that eventually flow into Felts [B]rook ....
(Emphasis added).

The Plaintiffs sought review of the Council's decision in Superior Court pursuant to M.R.Civ.P. 80B. After reviewing the briefs and the record, but without taking any additional evidence, that court entered judgment for the Plaintiffs, reversing the City Council's decision to deny the permit on the grounds that: (a) the Council was

bound by the Board of Appeals' prior determination that an automobile salvage business is a permitted use within the industrial district, and (b) the Council's concerns regarding water pollution are speculative and do not constitute permissible grounds for denial under the applicable licensing statute, 30 M.R.S.A. §§ 2451–2460. The Defendant, City of Brewer, seasonably appealed to this Court.

We note at the outset that in a case involving review of governmental action where the Superior Court received no additional evidence, "the Law Court will not review the Superior Court's decision as such, but will directly examine the record developed by the [municipal agency], the same as the Superior Court did." *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me. 1982). Our review in this instance is limited to determining whether the City Council abused its discretion or committed an error of law in denying the Plaintiff's permit application based on its own interpretation of the zoning ordinance and on its own belief that the salvage yard would pollute the water supply. *Id. See also Bruk v. Town of Georgetown*, 436 A.2d 894, 897 (Me.1981). Because we find that the City Council lacked authority even to consider issues related to zoning and water pollution in reviewing an application for an automobile graveyard permit, we affirm the judgment of the Superior Court.

Municipal corporations have no inherent authority to interfere with, or to regulate the use of, private property. *Cope v. Inhabitants of Town of Brunswick*, 464 A.2d 223, 225 (Me.1983); *Town of Windham v. LaPointe*, 308 A.2d 286, 290 (Me.1973). They may exercise only such powers as have been granted to them directly by our state constitution or which the Legislature has conferred upon them by statute. *Schwanda v. Bonney*, 418 A.2d 163, 165 (Me.1980). In this instance, the Legislature has delegated to municipal officers the authority to review and approve all applications for permits to establish, operate and maintain automobile

graveyards and junkyards, subject to certain criteria regarding their location and design. *See* 30 M.R.S.A. §§ 2452, 2454. Specifically, the statute provides that no permit shall be issued for any automobile graveyard or junkyard located within a certain distance from, and in view of, any highway unless the facility is adequately screened by natural objects, vegetation or fences in a manner which is acceptable to the municipal officers. 30 M.R.S.A. § 2454(1) & (2). Similarly, no permit shall be granted for any facility located within 300 feet and in view of certain public facilities such as parks, playgrounds, schools and churches. 30 M.R.S.A. § 2454(3). In addition, all permit applicants must demonstrate compliance with screening regulations promulgated by the State Department of Transportation pursuant to 30 M.R.S.A. § 2459. This is the only authority conferred by the statute, and they all relate directly to the express legislative purpose of "protecting the motoring public against possible accidents" by screening the discarded vehicles from view. *Ace Tire Company, Inc. v. Municipal Officers of Waterville*, 302 A.2d 90, 98 (Me.1973).[2]

Nowhere does the statute contain any reference to ensuring compliance with local zoning ordinances or the protection of water supplies from potential pollutants. Indeed, the responsibility for addressing these issues has been expressly delegated by the Legislature to other local and state authorities.

Concerns about water pollution are properly addressed by the State Board of Environmental Protection acting pursuant to its authority under the Site Location of Development Law, 38 M.R.S.A. §§ 481–485 (1978 & Supp.1983–1984), and the Maine Hazardous Waste, Septage and Solid Waste Man-

agement Act, 38 M.R.S.A. §§ 1301–1304 (Supp.1983–1984).[3] Having delegated this authority to the State Board of Environmental Protection, the Legislature could not have intended the municipal officers to make their own assessment of the likelihood of pollution without the benefit of the expertise or scientific and technical data available to the State Board of Environmental Protection. Accordingly, the Superior Court was correct in deciding that such matters were outside the purview of the City Council in reviewing the Plaintiff's application for an automobile graveyard or junkyard permit.

■ Whether an automobile graveyard or junkyard is a permitted use under the local zoning ordinance is for the code enforcement officer and the Zoning Board of Appeals to decide. *See Your Home, Inc. v. City of Portland*, 432 A.2d 1250, 1260 (Me. 1981) (zoning boards of appeal have "inherent interpretive responsibility" with respect to zoning ordinances, pursuant to 30 M.R.S.A. § 4963). *See also* Brewer Zoning Ordinance, ch. 34, § 400 (Board of Appeals authorized to interpret provisions of the ordinance that are called into question). Decisions of the local board made within the scope of its authority delegated by statute have the effect of final judgments and therefore are conclusive if not appealed from directly to the Superior Court pursuant to 30 M.R.S.A. § 2411(3)(F) (1978). *See Small v. Gartley*, 363 A.2d 724, 729 (Me. 1976). The Brewer City Council, acting in its legislative capacity, may later decide to amend the zoning ordinance to exclude or restrict such facilities from certain areas of the city; however, while exercising its adjudicatory function under the automobile graveyard and junkyard licensing statute,

---

**2.** In its declaration of purpose the statute provides in pertinent part:

These junkyards and graveyards have become a nuisance and a menace to safe travel on public ways, often distracting the attention of drivers of motor vehicles because it appears cars are parked on the highway or that an accident has occurred. It is declared that such junkyards and automobile graveyards

are a nuisance and are properly subject to regulation and control.
30 M.R.S.A. § 2451 (1978).

**3.** In this case the Plaintiffs did obtain State Board of Environmental Protection approval for their facility subsequent to the City Council's decision denying them a junkyard permit.

it is without authority either to make an initial determination regarding a permitted use under the zoning ordinance or to review a prior ruling on that issue by the Zoning Board of Appeals.[4]

■ An analysis of this entire statutory scheme reveals a clear legislative intent to limit the inquiry in automobile graveyard and junkyard permitting proceedings to evidence concerning the location of the facility with reference to a highway and compliance with screening regulations. 30 M.R.S.A. § 2454(5) authorizes municipal officers to apply more stringent restrictions and to impose conditions on the operation of such facilities,[5] but the statute does not authorize *denial* of a permit application for any reason other than a failure to satisfy the location and design criteria specified in section 2454(1)-(4) and in the Department of Transportation's screening regulations.

■ An administrative agency cannot deny a permit on grounds other than those specified by statute or local ordinance. *See Ullis v. Inhabitants of Town of Boothbay Harbor,* 459 A.2d 153, 158–59 (Me.1983); *Schwanda v. Bonney,* 418 A.2d 163, 167 (Me.1980) and *Roy v. Inhabitants of City of Augusta,* 387 A.2d 237, 240 (Me.1978) (denial of permits based on provisions in ordinance which exceeded regulatory scope authorized by statute reversed). In a case such as this where the applicant has demonstrated compliance with all the statutory criteria, the municipal officers must issue the permit. *Schwanda v. Bonney,* 418 A.2d at 167. The failure of the Brewer Council to do so was reversible legal error.

Accordingly, the entry must be:

Judgment affirmed.

All concurring.

---

**4.** The Superior Court was not entirely correct, therefore, in ruling that the City Council was bound by the Board of Appeals' determination that the Plaintiffs' salvage yard is a permitted use; in actuality, the Council had no authority even to consider the zoning issue.

---

**5.** We note that in this case, as in *Lynch v. Town of Kittery,* 473 A.2d 1277, 1280 (Me.1984), the City Council never sought to impose conditions on the Plaintiffs' proposed facility; therefore, the nature or scope of the conditions which it might be authorized to order is not before the Court on this appeal.